J-S31028-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN RE: ADOPTION OF H.G.P., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.B. AND K.P.-B. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 434 MDA 2020 |

Appeal from the Order Entered February 5, 2020
In the Court of Common Pleas of Schuylkill County Orphans' Court at
No(s): A63-024-19

BEFORE: BOWES, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY DUBOW, J.: **FILED SEPTEMBER 10, 2020**

J.B. ("Stepfather") and K.P.-B ("Mother") (collectively, "Appellants") appeal from the February 5, 2020 Order that denied their Petition to Involuntarily Terminate the Parental Rights ("TPR Petition") of J.J. ("Father"). Upon review, we affirm.

**PROCEDURAL AND FACTUAL HISTORY**

The procedural and factual history is as follows. Mother and Father are parents to H.G.P. ("Child"). Mother and Father lived together when Child was born in April 2014, but they split up when Child was six weeks old. Mother moved in with her parents ("Maternal Grandmother" and "Maternal Grandfather," collectively, "Maternal Grandparents"). By informal agreement, Father had visitation with Child.

On May 24, 2017, after Father filed a *pro se* Custody Complaint, Mother and Father entered a stipulation that awarded both parties shared legal

custody, Mother primary physical custody, and Father partial custody from 10:00 AM to 6:00 PM on alternating Fridays, the Wednesday following a Friday custodial time, and the Monday prior to the Friday custodial time. As part of the stipulation, Father admitted that he was convicted of Driving Under the Influence ("DUI") and Possession of marijuana, and that he was scheduled to serve a probation sentence until February 2018. Father agreed to submit to a substance abuse evaluation, which he failed to complete.

During that same time, Stepfather moved into Maternal Grandparents home to live with Mother and Child.

In December 2017 and March 2019, the Commonwealth charged Father with two more DUIs.

On July 20, 2018, Mother and Maternal Grandmother drove Child to Father's home for his scheduled custody time at 10:00 AM. Upon arrival, Mother observed beer cans, a marijuana pipe, and Father's girlfriend inside the home. Mother did not allow Child to stay for the scheduled custody time, and told Father to contact an attorney if he wanted to see Child again. Father has not seen Child since that date.

Father sought legal assistance from Mid Penn Legal Services, but that agency denied his request for representation.

In August 2018, Mother married Stepfather. During this time, Mother refused to accept communication from Father. Mother would not answer the phone if she recognized Father as the caller, failed to respond to text messages from Father, and blocked Father on social media.

In October 2018, Father was incarcerated briefly on a bench warrant for missing an appearance in one of his pending DUI cases. Father called Mother from prison; Mother did not recognize the number and answered the call. Mother subsequently hung up on Father and contacted the prison to complain about Father contacting her. In response, a prison lieutenant warned Father that Father could be prosecuted for Harassment if he contacted Mother again.

In November 2018, Father filed a *pro se* Petition for Contempt for Mother's ongoing violation of the existing custody order. In response, Mother filed a Petition for Special Relief. Father failed to attend the scheduled hearing; Father was unable to secure transportation, and he was unaware that he could request a continuance or permission to participate by phone.

On December 14, 2018, in an interim Order, the court dismissed Father's Petition for Contempt and granted Mother sole physical custody of Child. The court also ordered:

> Father will be directed to undergo a hair follicle test within ten (10) days of the date of this Order. The results are to be submitted to the Custody Office, who will provide a copy to Mother's counsel. Following receipt of the hair follicle result, the Custody office will schedule another hearing in order to determine, whether, based upon the test results, Father's custodial time should resume, and if so under what terms or conditions.

Interim Custody Order, 12/14/18.

In March 2019, Father voluntarily entered a drug and alcohol rehabilitation facility ("rehab"). While in rehab, Father sent Child a letter expressing his love, and a birthday card. Mother received the mailings, but did not share either with Child. Father left the rehab at the end of April 2019

before completing the program because he could not comply with the facility's ban on tobacco use.

On April 25, 2019, Appellants filed a first TPR Petition alleging that Father had shown a settled purpose of relinquishing his parental rights. The trial court denied the Petition after learning that Father had recently filed a Petition for Contempt to enforce his custody rights.

On July 15, 2019, as part of his sentence on his two outstanding DUI charges, Father was admitted to the Schuylkill County Restrictive Intermediate Punishment Program, which involved an initial period of inpatient drug and alcohol treatment at Pyramid Hillside rehab, where Father remained for 62 days. While in rehab, Father wrote Child a letter expressing his love.

On July 30, 2019, Appellants filed a second TPR Petition pursuant to 23 Pa.C.S. § 2511(a)(1), (2) and (b). Father filed an Answer on October 18, 2019.

On November 13, 2019, the trial court held a hearing on Appellants' second TPR Petition. The court heard testimony from Father's probation officer Erica Cola, Maternal Grandmother, Mother, Stepfather, Father, and Father's mother.

On February 5, 2020, after hearing evidence and reviewing Briefs submitted by the parties, the trial court denied Appellants' TPR Petition. The Order also included the following language:

> Father is ORDERED to promptly provide a written request to his most recent rehab facility to provide a discharge summary to the Civil Court Administrator, Schuylkill County Courthouse, 401

North Second Street, Pottsville, PA 17901. The request shall include a statement from Father authorizing the facility to release the summary.

Father is further ORDERED to promptly provide his Adult Probation Officer with request and authorization to provide the Civil Court Administrator with a report of his compliance with the requirement that he abstain from drug and alcohol use and the results of testing performed.

Upon receipt of this information, the Civil Court Administrator shall forward it to the Custody Office for assignment to the appropriate custody master for a determination whether Father's custody time should resume in accordance with the Custody Order dated December 14, 2018.

Order, 2/5/20.

Appellants timely appealed. Both Appellants and the trial court complied with Pa.R.A.P. 1925.

**ISSUES RAISED ON APPEAL**

Appellants raise the following issues on appeal:

1. Did the trial court err or abuse its discretion by finding that Father utilized resources to preserve the parental relationship and in finding that Father exercised reasonable firmness in resisting obstacles in the path of establishing and maintaining the parental relationship?

2. Did the trial court err or abuse its discretion by finding that Mother and Stepfather failed to produce clear and convincing evidence that Father's repeated and continued incapacity, abuse, neglect or refusal has caused [C]hild to be without essential parental care, control or subsistence necessary for her physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by Father?

3. Did the trial court err or abuse its discretion in failing to give primary consideration to the development, physical, and emotional needs and welfare of [C]hild?

- 5 -

4. Did the trial court err or abuse its discretion by modifying the parties' custody order as a result of the termination hearing when it nullified terms in the December 14, 2018 custody order and directing the assignment of a custody master when there was no petition to modify the custody order before the trial court?

5. Did the trial court err or abuse its discretion in failing to consider that Father had actual notice of the June 19, 2019 termination hearing and did not attend the July 30, 2019 hearing or make any efforts to remedy his failure to perform parental duties until well after both dates?

Appellants' Br. at 3-4 (reordered for ease of disposition).

**LEGAL ANALYSIS**

When we review a trial court's decision to grant or deny a petition to involuntarily terminate parental rights, we must accept the findings of fact and credibility determinations of the trial court if the record supports them. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id*. (citation omitted). "Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (citation omitted). We may not reverse merely because the record could support a different result. *T.S.M.*, 71 A.3d at 267. We give great deference to the trial courts "that often have first-hand observations of the parties spanning multiple hearings." *Id.* Moreover, "[t]he trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted).

Section 2511 of the Adoption Act, 23 Pa.C.S. § 2511, governs termination of parental rights, and requires a bifurcated analysis. "Initially, the focus is on the conduct of the parent." *In re Adoption of A.C.*, 162 A.3d 1123, 1128 (Pa. Super. 2017) (citation omitted). "The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a)." *Id.* (citation omitted). If the court determines that the parent's conduct warrants termination of his or her parental rights, the court then engages in "the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child." *Id.* (citation omitted).

## 23 Pa.C.S. § 2511(a)(1)

Appellants first argue that the trial court abused its discretion when it failed to terminate Father's parental rights pursuant to Section 2511(a)(1). Appellants' Br. at 30. Appellants argue that Father's action of sending two letters to Child does not demonstrate that Father utilized all of his resources to make a concerted effort to maintain a place of importance in Child's life. *Id*.

Section 2511(a)(1) provides that the trial court may terminate parental rights if the Petitioner establishes that "the parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." 23 Pa.C.S. §

2511(a)(1). The focus of involuntary termination proceedings is on the conduct of the parent and whether that conduct justifies a termination of parental rights. *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa. Super. 2001). Although the statute focuses on an analysis of the six months immediately preceding the filing of the petition, the court must consider the whole history of a given case and may consider a parent's inaction before the six-month statutory provision. *In re K.Z.S.*, 946 A.2d 753, 758 (Pa. Super. 2008). Additionally, "[t]he court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination." *Id.* (citations omitted).

This Court has repeatedly defined "parental duties" in general as the affirmative obligation to provide consistently for the physical and emotional needs of a child:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty . . . requires continuing interest in the child and a genuine effort to maintain communication and association with the child. Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

***In re B., N.M.***, 856 A.2d 847, 855 (Pa. Super. 2004) (citations and internal paragraph breaks omitted).

Moreover, "[p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." ***Id.*** (citation omitted). "A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship." ***Id.*** (citation omitted).

Our review of the record reveals that the trial court did not abuse its discretion when it concluded that Appellants failed to present clear and convincing evidence to terminate Father's parental rights under Section 2511(a)(1). The trial court considered the totality of the circumstances and concluded that Father did not demonstrate a settled purpose of relinquishing his parental rights and that he exercised reasonable firmness in overcoming obstacles that Mother placed in his path. Further, the trial court found Father's testimony to be credible that after Mother refused to honor the custody order, he made repeated attempts to contact Mother and Child, but Mother blocked his communications. ***See*** Trial Ct. Op., filed 3/19/20, at 9. The trial court placed great weight on Father's explanations that he attempted to enforce the custody order by filing a *pro se* Petition for Contempt and unsuccessfully trying to secure legal counsel. ***Id***. The trial court also emphasized that a prison

lieutenant threatened Father with harassment charges for attempting to contact Mother. *Id*.

> The trial court opined:
>
> There is no evidence that Father demonstrated a settled purpose of relinquishing his parental rights. After Mother told him he would need an attorney if he wanted to see his daughter again, Father steadfastly made every effort to speak with his daughter and to convince Mother to honor the custody order they had negotiated. He repeatedly called her, but she would not answer calls that came from his phone. He tried contacting her on Facebook, but she blocked him. He even tried to contact her through her husband to no avail. . . . Additionally, [Father] had already been threatened with harassment charges for trying to contact Mother while in prison. . . . Knowing from experience that Mother would be represented by counsel and unable to afford counsel of his own, Father sought representation from Legal Services but was refused help. He tried to enforce the custody order *pro se* but missed the hearing due to transportation problems. . . . [T]his [c]ourt concludes that Father exercised reasonable firmness in overcoming the many obstacles Mother placed in his path.

*Id.* at 9-10. The record supports the trial court's findings. We decline to reweigh the evidence or interfere with the trial court's credibility determinations. Accordingly, we find no abuse of discretion in the trial court's denial of Appellants' TPR Petition.

Appellants cite **Adoption of Baby Boy A**, 517 A.2d 1244 (Pa. 1986), **Adoption of Dale A.**, 683 A.2d 297 (Pa. Super. 1996), and **B., N.M., supra**, to support their argument that they presented sufficient evidence to the trial court to support a termination of Father's parental rights. This argument is unpersuasive; we can easily distinguish the instant case from each of the above cases.

In **Baby Boy A**, our Supreme Court affirmed this Court's reversal of the trial court's refusal to terminate a father's parental rights when the father found out he had a child while he was incarcerated, made no efforts during fifteen months of incarceration to find out more about the child, and made minimal efforts to contact the mother once he was paroled. 517 A.2d at 521, 523-24. In **Dale A.**, this Court affirmed the trial court's termination of a father's parental rights when, over a five year period, incarcerated Father "merely [] mailed a few cards to his sons" and had two brief phone contacts. 683 A.2d at 302. In **B., N.M.**, this Court reversed the trial court's denial of the TPR petition that a mother and her new husband filed against a father, who was incarcerated for the duration of the ten-year-old child's life and had sporadic contact with the child. 856 A.2d at 850-54.

Instantly, unlike the parents in **Baby Boy A**, **Dale A.**, and **B., N.M.,** Father had consistent contact with Child until Mother violated the custody order. Further, Father filed a *pro* se Petition for Contempt to enforce custody, Father was only briefly incarcerated, Father repeatedly tried to call, write to, and electronically contact Mother and Child, and Father successfully completed rehab in an effort to better himself for Child. As the cases relied upon by Appellants are easily distinguished, Appellants' argument fails.

## 23 Pa.C.S. § 2511(a)(2)

Appellants next argue that the trial court abused its discretion when it failed to terminate Father's parental rights pursuant to Section 2511(a)(2). Appellants' Br. at 39. Appellants argue that Father's substance abuse, criminal

history and resulting incarcerations, and unstable housing render him unable to parent Child. *Id*. at 41, 45.

Section 2511(a)(2) provides for termination of parental rights where the petitioner demonstrates by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." 23 Pa.C.S. § 2511(a)(2); *In re Adoption of S.P.*, 47 A.3d 817, 827 (Pa. 2012) (citations omitted). The grounds for termination of parental rights under Section 2511(a)(2) due to parental incapacity are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002).

With respect to incarcerated parents, our Supreme Court has held that "incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing essential parental care, control, or subsistence." *S.P.*, 47 A.3d at 830 (citation and internal quotation marks omitted). Incarceration alone is not sufficient to support termination under any subsection, but "incarceration will certainly impact a parent's capability of performing parental duties, and **may** render a parent incapable of performing parental duties under subsection (a)(2)." *In re E.A.P.*, 944 A.2d 79, 82–83 (Pa. Super. 2008) (emphasis in original). "Each

case of an incarcerated parent facing termination must be analyzed on its own facts, keeping in mind . . . that the child's need for consistent parental care and stability cannot be put aside or put on hold[.]" *Id*. at 84.

Applying these principles, the trial court concluded that Appellants failed to present clear and convincing evidence that Father cannot or will not remedy the substance abuse that caused Child to be without Father's parental care, as evidenced by Father's participation in rehab, writing letters to Child, obtaining employment, and arranging for support payments to be withheld from his pay. Trial Ct. Op., filed 3/19/20, at 11. The trial court opined:

> Father acknowledged when Mother cut off his visits with [Child], he was drinking daily and using marijuana. He recognized that he was in no position to be a resource for his daughter. Father had not paid support since October 2018 because he had no employment, likely related to his addiction problems.
>
> However, this not a case where a parent only gives lip service to a desire to address the problems that prevent him from performing his parental duties. Here, Father voluntarily entered a rehab in March of 2019 where he stayed nearly two months. In July 2019, he began a sixty-two (62) day stint in an inpatient rehab as part of the court's SCRIP program. While in both rehab facilities, he wrote to [Child] expressing his love for her and accepting responsibility for his role in not seeing her. To date, the weekly drug tests have confirmed his commitment. Additionally, he has been employed since leaving the halfway house and has arranged for support payments to be withheld from his pay. The evidence does not convince the [c]ourt by clear and convincing evidence that grounds exist to terminate Father's parental rights.

*Id.* The record supports the trial court's findings. Once again, we decline to reweigh the evidence or usurp the trial court's credibility determinations and find no abuse of discretion.

**23 Pa.C.S. § 2511(b)**

In their third issue, Appellants argue that the trial court abused its discretion when it failed to consider the developmental, physical, and emotional needs of Child under Section 2511(b). Appellants' Br. at 45. Appellants argue that they met their burden to prove by clear and convincing evidence that Father's conduct warrants termination of his parental rights under Section 2511(a), and, therefore, this Court should remand the matter for a "determination of a bond" and whether termination of Father's parental rights is in Child's best interest under Section 2511(b). *Id.* at 45, 48. We disagree.

As discussed above, we find the trial court did not abuse its discretion when it concluded that Appellants failed to demonstrate that Father's conduct warranted a termination of his parental rights under Section 2511(a)(1) and (2). Accordingly, there is no need for this Court, or the trial court, to engage in the second part of the analysis pursuant to Section 2511(b) to determine if termination is in Child's best interest. *See A.C.*, 162 A.3d at 1128.

**Existing Custody Order**

In Appellants' fourth issue, they aver that the court committed reversible error by *sua sponte* modifying the existing interim child custody Order without jurisdiction, notice, and a pending petition to modify custody. Appellants' Br. at 51-52. This argument is devoid of merit.

Upon review, the trial court did not, in fact, modify the existing custody Order. The December 15, 2018 interim custody Order contains a provision

that Father is "directed to undergo a hair follicle test" and, following receipt of the test, the Custody office will schedule another hearing to "determine, whether, based upon the test results, Father's custodial time should resume[.]" Interim Custody Order, 12/14/18. In its February 5, 2020 Order, the trial court ordered Father to provide a report and/or drug and alcohol testing results from his rehab facility and his Adult Probation Officer to the Civil Court Administration and directed the Custody Office to proceed "in accordance" with the December 14, 2018 Order. Order, 2/5/20. Accordingly, this argument lacks merit.

**Notice of Initial TPR Petition**

In their final argument, Appellants contend that the trial court should not have considered any actions that Father took subsequent to the filing and notice of the **initial** TPR Petition, which Appellants filed on April 25, 2019, gave notice of on July 9, 2019 and July 19, 2019 via newspaper publication, and the trial court denied on July 30, 2020. Appellant's Br. at 56. This argument fails.

We agree with Appellants' assertion that Section 2511(b) provides, in relevant part, "[w]ith respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the **giving of notice of the filing of the petition**." 23 Pa.C.S. § 2511(b) (emphasis added). Accordingly, in evaluating Section 2511(a)(1), the trial court was not permitted to consider any of Father's efforts that he initiated

after receiving notice of the **instant** TPR Petition, Appellants' second, which Appellants filed on July 30, 2019 and served in early August.

Appellants, however, argue that the trial court should not consider any of Father's efforts after they filed and served notice of their first TPR Petition, claiming that the November 13, 2019 hearing on the second Petition was "essentially a rehearing" of the first Petition. Appellants' Br. at 52. Appellants' misinterpret the law and mischaracterize the proceedings.

As noted above, the trial court denied after a hearing Appellants' first TPR Petition served on April 25, 2019. Because Appellants did not appeal that decision, that first Petition is not the subject of the instant appeal. Appellants served their second TPR Petition, that **is** the subject of the instant appeal, in early August 2019. Accordingly, contrary to Appellants' assertion, the hearing held on the second TPR Petition was not "a rehearing." Rather, it was a new hearing held on a new TPR Petition. Accordingly, the trial court was not precluded from considering any of Father's parenting efforts that occurred prior to early August 2019 when Father received notice of the instant second TPR Petition. Appellants' argument is meritless.

**CONCLUSION**

In conclusion, the record supports trial court's findings and, thus, the court did not abuse its discretion when it denied Appellants' TPR Petition to terminate Father's parental rights to Child.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/10/2020